**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FISERV, INC., FRANK J. BISIGNANO, MICHAEL P. LYONS, ROBERT W. HAU, and KENNETH F. BEST,<br><br>Defendants. | CASE No. 1:25-cv-06094-JHR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF YOKO MOMOYAMA TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br><u>**CLASS ACTION**</u> |

Yoko Momoyama ("Movant") respectfully submits this memorandum of law in support of her motion for an Order, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of the common stock of Fiserv, Inc. ("Fiserv" or the "Company") between July 24, 2024 and July 22, 2025, both dates inclusive (the "Class Period"); and

(b)     approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

1

## INTRODUCTION AND BACKGROUND

On July 24, 2025, this action was commenced against Fiserv, Frank J. Bisignano, Michael P. Lyons, Robert W. Hau, and Kenneth F. Best (collectively, "Defendants"). That same day, an early notice was issued pursuant to the PSLRA advising class members of, among other things, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Ex. 1 hereto.

Fiserv is a global provider of transaction processing software for banks and retail merchants. Fiserv's flagship product and most important growth driver is Clover, which provides merchants with a payment "gateway" to facilitate the secure processing of credit, debit, and mobile payment transactions on behalf of financial institutions and their customers. Clover revenue is primarily generated from transaction fees paid by merchants, which are computed as a percentage of the dollar value for goods and services charged through Clover. Fiserv positioned Clover as a comprehensive "operating system for small businesses" that also generates revenue from POS hardware sales and expensive subscription-based value-added services ("VAS") like payroll administration software, merchant financing, and cash flow management solutions.

During the Class Period, the Company claimed that it closely tracked gross payment volume ("GPV") trends and merchant attrition. According to Defendants, Fiserv would primarily achieve its financial targets by signing up new Fiserv merchants onto Clover, instead of moving existing Fiserv merchants on other platforms (its so called "back book") to Clover. Specifically, Defendants told investors that 90% of Clover revenue growth was, and would continue to be, generated from new Fiserv merchants, while only 10% would come from back book merchants who proactively switched to Clover. In fact, Defendants acknowledged that the higher-priced Clover platform was impractical for many smaller merchants within its back book who did not require Clover's VAS functions.

During 2023, Fiserv began to phase out Payeezy, its older payment gateway for small business merchants. Payeezy was cheaper for small business merchants and provided them with basic e-commerce functions. Specifically, the Company reported Clover revenue of $2.7 billion on GPV of $310 billion for 2024, accounting for half of Fiserv's year-over-year revenue growth. Unbeknownst to investors, Clover's 2024 Revenue and GPV growth were boosted by these forced migrations. Furthermore, the legacy Payeezy merchants were leaving Clover en masse for competitors like Square and Toast because Clover was much more expensive than Payeezy and provided functions they did not need or want.

The Class Period begins on July 24, 2024, when Bisignano assured investors that Clover's growth was being fueled by new merchant business (not its back book) and that Clover was not facing significant merchant attrition. As the Class Period progressed, Defendants continued to tout Clover's growth prospects while failing to disclose that Clover GPV growth was decelerating due to attrition from former Payeezy customers that had been forcibly moved to Clover. Fiserv executives later admitted that this attrition began relatively quickly and was largely driven by price-sensitive Payeezy merchants seeking lower-cost alternatives such as Square, Toast, and Shopify, as they were not utilizing Clover's expensive hardware and VAS solutions. In addition, poor customer service and other operational issues further drove merchant attrition on Clover.

The complaint alleges that, throughout the Class Period, Defendants misled investors by failing to disclose that: (a) due to cost issues and other problems with its Payeezy platform, Fiserv forced Payeezy merchants to migrate to its Clover platform; (b) Clover's revenue growth and GPV growth were temporarily and unsustainably boosted by these forced conversions, which concealed a slowdown in new merchant business; (c) shortly after these conversions, a significant portion of former Payeezy merchants switched to competing solutions due to Clover's high pricing, inadequate customer service, and other issues; (d) as a result of these merchant losses, Clover's

GPV growth was significantly slowing, and its revenue growth was unsustainable; and (e) based on the foregoing, Fiserv's positive Class Period statements about Clover's growth strategies, competition, attrition, GPV growth, and business prospects were materially false and misleading.

The market began to learn the truth about Defendants' fraud on April 24, 2025. On that date, Fiserv shocked investors by reporting Clover GPV growth of only 8% for the first quarter of 2025, a material stepdown from 2024 GPV rates of between 14% and 17%. Analysts at J.P. Morgan noted that this was "the widest spread between revenue and volume in our model's history, raising concerns about sustainability of premium growth." On this news, Fiserv stock dropped 18.5 percent.

Then, on May 15, 2025, Fiserv disappointed investors by disclosing that GPV growth deceleration would continue throughout 2025. On this news, Fiserv stock dropped an additional 16.2 percent, closing at $159.13 on May 15, 2025.

Finally, on July 23, 2025, Fiserv lowered the top end of its full-year organic growth guidance range and confirmed that its quarterly organic revenue in the Merchant segment had decelerated to 9 percent year-over-year from 11 percent in the previous quarter. On this news, Fiserv stock dropped an additional 13.9 percent, closing at $143.00 on July 23, 2025.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I. MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending

motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice …;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that she is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[1] factors in

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $228,221.80 in connection with purchases of Fiserv common stock. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Fiserv common stock during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

1. **Movant's Claims are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiffs' claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiffs' claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading and failing to disclose material statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from her investments in Fiserv common stock and is therefore extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

Further, Movant is a sophisticated investor with more than 30 years of investing experience. Movant holds a Doctor of Medicine and a Master of Arts in Chemistry. Movant works as a physician.

## II. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching Movant's and the Class's claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the country. *See* Ex. 4 hereto.

The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: September 22, 2025                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## **CERTIFICATE OF COMPLIANCE**

      The undersigned counsel certifies that this brief complies with the word count limit set forth in Local Civil Rule 7.1(c). According to the word count feature of the word-processing system used to prepare this brief, the document contains 2,630 words, excluding the parts of the document exempted by the rule.

                                            /s/Phillip Kim

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 22, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

      /s/Phillip Kim