UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>FISERV, INC., FRANK J. BISIGNANO, MICHAEL P. LYONS, ROBERT W. HAU, and KENNETH F. BEST,<br><br>      Defendants. | No. 1:25-cv-06094-JR-VF<br><br>Judge Jennifer Rearden<br><br><u>CLASS ACTION</u><br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF <u>SELECTION OF LEAD COUNSEL</u>**

# TABLE OF CONTENTS

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| SUMMARY OF THE ACTION AND STATEMENT OF FACTS | 3 |
| ARGUMENT | 5 |
| I. THE PENSION FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF | 5 |
|     A. The PSLRA Standard for Appointing Lead Plaintiff | 5 |
|     B. The Pension Funds Are the "Most Adequate Plaintiff" | 6 |
|         1. The Pension Funds' Motion Is Timely | 6 |
|         2. The Pension Funds Have the Largest Financial Interest | 6 |
|         3. The Pension Funds Satisfy Rule 23's Typicality and Adequacy Requirements | 7 |
|             (i) The Pension Funds' Claims Are Typical | 7 |
|             (ii) The Pension Funds Will Fairly and Adequately Protect the Interests of the Class | 8 |
|         4. The Pension Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA | 9 |
| II. THE PENSION FUNDS' SELECTION OF COUNSEL MERITS APPROVAL | 11 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ....................................................................................10, 11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...................................................................................................11

*Cushman v. Fortress Biotech, Inc.*,
   2021 WL 7449182 (E.D.N.Y. Mar. 24, 2021) ........................................................................7

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................6

*Hom v. Vale, S.A.*,
   2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .........................................................................7, 8

*In re Millennial Media, Inc. Sec. Litig.*,
   87 F. Supp. 3d 563 (S.D.N.Y. 2015) .......................................................................................8

*Mustafin v. GreenSky, Inc.*,
   2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ....................................................................9, 11

*Reimer v. Ambac Fin. Grp., Inc.*,
   2008 WL 2073931 (S.D.N.Y. May 9, 2008) ........................................................................11

*San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*,
   2023 WL 3750115 (S.D.N.Y. June 1, 2023) ..........................................................................7

*Snyder v. Baozun Inc.*,
   2020 WL 5439763 (S.D.N.Y. Sept. 8, 2020)..........................................................................8

**Rules & Statutes**

Fed. R. Civ. P. 23.................................................................................................... *passim*

15 U.S.C. § 78u-4 *et seq.* ........................................................................................ *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   No. 04-cv-8141 (S.D.N.Y.)....................................................................................................12

*In re Bear Stearns Cos., Inc. Sec. Derivative, & ERISA Litig.*,
   No. 08-md-1963 (S.D.N.Y.) ..................................................................................................12

*In re Satyam Compt. Servs. Ltd. Sec. Litig.*,
   No. 09-md-2027 (S.D.N.Y.) ...........................................................................................12

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .......................9, 11, 12

Proposed Lead Plaintiff City of Hollywood Police Officers' Retirement System ("Hollywood Police") and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach ("Miami Beach F&P" and collectively the "Pension Funds") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of their motion for the entry of an Order: (i) appointing the Pension Funds as Lead Plaintiff in the above-captioned securities class action (the "Action"); (ii) approving the Pension Funds' selection of Labaton Keller Sucharow LLP ("Labaton") as Lead Counsel for the Class in the Action; and (iii) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The Pension Funds—sophisticated institutional investors—respectfully submit that they should be appointed Lead Plaintiff in the Action on behalf of the "Class" consisting of all persons or entities who purchased or otherwise acquired Fiserv, Inc. ("Fiserv" or the "Company") common stock between July 24, 2024 and July 22, 2025 (the "Class Period") and were damaged thereby. The Action seeks to recover damages caused by violations of the federal securities laws and seeking to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act, against the Company and certain of its executive officers ("Defendants").

The PSLRA directs courts to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which member or members of the Class have the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

For the reasons discussed herein, the Pension Funds submit that they are the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. The Pension Funds incurred approximately **$1,666,404** in losses as a result of their transactions in Fiserv common stock during the Class Period as calculated on a last-in-first-out ("LIFO") basis.[1] Accordingly, the Pension Funds have a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of the federal securities laws—an interest believed to be greater than that of any other qualified movant.

In addition to asserting the largest financial interest, the Pension Funds readily satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members of the Class and will fairly and adequately represent the interests of the Class. Indeed, the Pension Funds are a paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a real financial interest in the litigation and have extensive experience supervising the work of outside counsel in securities litigation. *See* Joint Declaration, McConville Decl. Ex. C. The Pension Funds fully understand the Lead Plaintiff's obligations to the Class under the PSLRA and have amply demonstrated their commitment and ability to fulfill those responsibilities here. *See id.*

Finally, the adequacy of the Pension Funds is further established through their selection of experienced class counsel Labaton to serve as Lead Counsel for the Class. Specifically, Labaton has been actively developing the claims on behalf of the Class at the direction of the Pension Funds

---

[1] A copy of the PSLRA-required Certifications of the Pension Funds is attached as Exhibit A to the accompanying Declaration of Francis P. McConville ("McConville Decl."), which set forth all transactions for the Pension Funds in Fiserv common stock during the Class Period. In addition, a chart reflecting the calculation of the Pension Funds' losses as a result of their transactions in Fiserv common stock during the Class Period is attached as Exhibit B to the McConville Decl.

and filed the complaint against Fiserv on behalf of Hollywood Police. Accordingly, the Pension Funds respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## SUMMARY OF THE ACTION AND STATEMENT OF FACTS

Fiserv is a global provider of transaction processing software for banks and retail merchants. ECF No. 1 ¶ 2. The Action alleges that, during the Class Period, Defendants misled by failing to disclose that: (a) due to cost issues and other problems with its Payeezy platform, Fiserv forced Payeezy merchants to migrate to its Clover platform; (b) Clover's revenue growth and gross payment volume ("GPV") growth were temporarily and unsustainably boosted by these forced conversions, which concealed a slowdown in new merchant business; (c) shortly after these conversions, a significant portion of former Payeezy merchants switched to competing solutions due to Clover's high pricing, inadequate customer service, and other issues; (d) as a result of these merchant losses, Clover's GPV growth was significantly slowing, and its revenue growth was unsustainable; and (e) based on the foregoing, Fiserv's positive Class Period statements about Clover's growth strategies, competition, attrition, GPV growth, and business prospects were materially false and misleading. *Id.* ¶ 8.

The market began to learn the truth about Defendants' fraud on April 24, 2025. On that date, Fiserv shocked investors by reporting Clover GPV growth of only 8 percent for the first quarter of 2025, a material stepdown from 2024 GPV rates of between 14 percent and 17 percent. On this news, Fiserv stock dropped 18.5 percent. *Id.* ¶ 9. Then, on May 15, 2025, Fiserv disappointed investors by disclosing that GPV growth deceleration would continue throughout 2025. On this news, Fiserv stock dropped an additional 16.2 percent, closing at $159.13 on May 15, 2025. *Id.* ¶ 10. Finally, on July 23, 2025, Fiserv lowered the top end of its full-year organic growth guidance range and confirmed that its quarterly organic revenue in the Merchant segment

3

had decelerated to 9 percent year-over-year from 11 percent in the previous quarter. On this news, Fiserv stock dropped an additional 13.9 percent, closing at $143.00 on July 23, 2025. *Id.* ¶ 11.

As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's securities, the Pension Funds and the Class have suffered significant damages. *Id.* ¶ 12.

The Pension Funds suffered losses of approximately ***$1,666,404*** on their relevant transactions in Fiserv common stock during the Class Period. *See* McConville Decl., Exs. A & B. As set forth in their Joint Declaration, the Pension Funds are sophisticated institutional investors with experience and success in major securities litigation lawsuits and in serving as lead plaintiffs with each other and alongside other institutional investors. McConville Decl. Ex. C ¶ 6. The Pension Funds are both well-aware of the Lead Plaintiff's duties, including the responsibility to oversee and supervise the litigation separate and apart from counsel. *See* McConville Decl. Ex. C ¶¶ 2-3, 9-11. The Pension Funds have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of the Action. *Id.* ¶¶ 2-4, 7-14.

As part of their effort to formalize their oversight of the Action and before seeking appointment as Lead Plaintiff, representatives of the Pension Funds held a conference call on September 19, 2025, in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the Action, the benefits that the Class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures the Pension Funds have and will take to ensure that the Class' claims will be zealously and efficiently litigated. *Id.* ¶ 9. Further, while the Pension Funds appreciate that attorneys' fees awarded in the Action, if any, will be set by the Court, they take very seriously their obligation as

Lead Plaintiff and plan to coordinate to ensure this litigation is prosecuted efficiently and in a cost-effective manner. *Id.* ¶ 13.

## ARGUMENT

I. **THE PENSION FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF**

The Pension Funds respectfully submit that they should be appointed Lead Plaintiff because they filed the instant motion in a timely manner, believe they have the largest financial interest in this litigation of any qualified movant, and otherwise satisfy the typicality and adequacy requirements of Rule 23.

A. **The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate

plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see Foley v. Transocean Ltd.,* 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (discussing qualifications for lead plaintiff presumption).

### B. The Pension Funds Are the "Most Adequate Plaintiff"

#### 1. The Pension Funds' Motion Is Timely

The Pension Funds filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the Action caused notice to be published on *Business Wire* on July 24, 2025, the day the complaint in the Action was filed. *See* Notice, McConville Decl., Ex. D. The notice, in accordance with the PSLRA, indicated that applications for Lead Plaintiff must be made no later than 60 days from the date on which the notice was published, *i.e.*, September 22, 2025. The Pension Funds filed this motion seeking appointment as Lead Plaintiff within this deadline and thus have satisfied the procedural requirements of the PSLRA.

#### 2. The Pension Funds Have the Largest Financial Interest

The PSLRA instructs the court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated herein, during the Class Period, the Pension Funds (1) purchased 26,164 shares of Fiserv stock; (2) purchased 23,346 net shares of Fiserv stock; (2) made $4,735,687 in net expenditures on their purchases of Fiserv stock;

6

and (4) suffered losses of approximately **$1,666,404** in connection with their Class Period purchases of Fiserv common stock. *See* McConville Decl., Exs. A & B. To the best of the Pension Funds' knowledge, there is no other applicant seeking Lead Plaintiff appointment asserting a larger financial interest in the litigation. Accordingly, the Pension Funds have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.,* 2023 WL 3750115, at *7 (S.D.N.Y. June 1, 2023) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff").

### 3. The Pension Funds Satisfy Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also San Antonio Fire,* 2023 WL 3750115, at *2. At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Cushman v. Fortress Biotech, Inc.*, 2021 WL 7449182, at *5 (E.D.N.Y. Mar. 24, 2021) ("In determining whether the presumptively most adequate plaintiff satisfies Rule 23 for the purposes of the PSLRA, a court need only consider whether the lead plaintiff's claims are typical and adequate, and the presumptive lead plaintiff need only make a preliminary showing that its claims satisfy the typicality and adequacy requirements of Rule 23.").

#### (i) The Pension Funds' Claims Are Typical

The Pension Funds' claims are typical of those of the Class. Typicality is satisfied where the movant's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Hom v. Vale, S.A.*, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016) (citation

7

omitted). Here, the Pension Funds have suffered the same injuries arising from the same course of events as all members of the Class, and therefore their legal arguments to prove Defendants' liability are substantively identical. Like all other Class members, the Pension Funds: (i) purchased Fiserv common stock during the Class Period; (ii) in reliance on Defendants' false and misleading statements; and (iii) were damaged as a result. *See In re Millennial Media, Inc. Sec. Litig.,* 87 F. Supp. 3d 563, 571 (S.D.N.Y. 2015) (typicality satisfied where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'") (citation omitted). As such, the Pension Funds satisfy the typicality requirement of Rule 23.

### (ii) The Pension Funds Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class' interests to be fairly and adequately represented, the movant must show that: "'(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Vale*, 2016 WL 880201, at *6 (citation omitted).

The Pension Funds satisfy these elements because their substantial financial stake in the litigation provides them with the incentive to vigorously represent the Class' claims. *Snyder v. Baozun Inc.,* 2020 WL 5439763, at *3 (S.D.N.Y. Sept. 8, 2020) (noting investor group's "significant financial interest should ensure vigorous advocacy on behalf of the class.") (citation and internal quotation marks omitted). Further, the Pension Funds' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to

suggest any actual or potential conflict of interest or other antagonism between the Pension Funds and other Class members. In addition, the Pension Funds have retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* Section II, and timely submitted this choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) and 15 U.S.C. § 78u-4(a)(3)(B)(v). Finally, there is no proof that the Pension Funds are "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, the Pension Funds satisfy the adequacy requirement.

### 4. The Pension Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, the Pension Funds—sophisticated institutional investors—are precisely the type of investors Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34–35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34. To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See Mustafin v. GreenSky, Inc.*, 2019 WL 1428594, at *4 (S.D.N.Y. Mar. 29, 2019) (calling a group of "institutional investors, the type of investor Congress prefers as lead plaintiff").

9

The Pension Funds are both well-aware of the Lead Plaintiff's duties, including the responsibility to oversee and supervise the litigation separate and apart from counsel. *See* McConville Decl. Ex. C ¶¶ 2-3, 9-11. To this end, the Pension Funds have each submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See* McConville Decl. Exs. A & C; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("Groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff . . . . Because they have established their ability to act independent of counsel, [the institutional investors] are a proper group and are presumptive lead plaintiffs.").

As set forth in their Joint Declaration, the Pension Funds are sophisticated institutional investors with experience and success in major securities litigation lawsuits and in serving as lead plaintiffs both together and alongside other institutional investors. McConville Decl. Ex. C ¶ 6 (explaining that the Pension Funds have successfully served as lead plaintiff together and as part of cohesive groups). The Pension Funds have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of the Action. *Id.* ¶¶ 2-4, 7-14.

Moreover, the Pension Funds have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class. For example, Hollywood Police directed Labaton to file the Action against Fiserv and certain of its executives. *Id.* ¶ 4. Additionally, as part of their effort to formalize their oversight of the Action and before seeking appointment as Lead Plaintiff, representatives of the Pension Funds held a conference call on September 19, 2025, in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the Action, the benefits that the Class will receive from the leadership of

institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures the Pension Funds have and will take to ensure that the Class' claims will be zealously and efficiently litigated. *Id.* ¶ 9. Further, while the Pension Funds appreciate that attorneys' fees awarded in the Action, if any, will be set by the Court, they take very seriously their obligation as Lead Plaintiff and plan to coordinate to ensure this litigation is prosecuted efficiently and in a cost-effective manner. *Id.* ¶ 13. Through these measures and others, the Pension Funds have sought to ensure the Class will receive the best possible representation.

In sum, the Pension Funds have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. The Pension Funds are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA. *See, e.g., GreenSky, Inc.*, 2019 WL 1428594, at *5 (appointing group of three institutions that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class"); *In re Bank of Am.*, 258 F.R.D. at 270 (appointing group of institutions as lead plaintiff that submitted declaration detailing discussions regarding "plans for joint oversight over the litigation and joint supervision of counsel"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of institutions that demonstrated they were "cooperating and pursuing the litigation separately and apart from their lawyers").

## II. THE PENSION FUNDS' SELECTION OF COUNSEL MERITS APPROVAL

The PSLRA vests authority in the Lead Plaintiff to select lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's

choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734. Here, the Pension Funds have selected Labaton to serve as Lead Counsel for the Class.

Labaton has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors. For example, Labaton served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members. Labaton presently serves as lead counsel in several significant investor class actions. *See* Labaton Firm Resume, McConville Decl., Ex. E.

Accordingly, the Court may be assured that, by granting the Pension Funds' motion, the Class will receive the highest caliber of legal representation.

## **CONCLUSION**

For the foregoing reasons, the Pension Funds request that the Court grant their motion and enter an Order: (i) appointing the Pension Funds as Lead Plaintiff; (ii) approving the Pension Funds' selection of Labaton as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

DATED: September 22, 2025

Respectfully submitted,

*/s/ Francis P. McConville*

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville
Connor C. Boehme
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for Proposed Lead Plaintiff and Proposed Lead Counsel for the Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner
Stuart A. Kaufman
7080 NW 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Proposed Lead Plaintiff*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Movant the Pension Funds certifies that this Memorandum of Law in support of the Pension Funds Motion contains 3,835 words and is in compliance with the word-count limitation of Local Civil Rule 7.1(c).

Dated: September 22, 2025

*s/ Francis P. McConville*
Francis P. McConville

**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com