UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
CITY OF HOLLYWOOD POLICE                          : Civil Action No. 1:25-cv-06094-JHR-VF
OFFICERS' RETIREMENT SYSTEM,                      :
Individually and on Behalf                        :
of All Others Similarly Situated,                 : **CLASS ACTION**
                                                  :
                            Plaintiff,            :
                                                  :
        v.                                        :
                                                  :
FISERV, INC., FRANK J. BISIGNANO,                 :
MICHAEL P. LYONS, ROBERT W. HAU,                  :
AND KENNETH F. BEST,                              :
                                                  :
                            Defendants.           :
------------------------------------------------------------ x

**REPLY IN FURTHER SUPPORT OF THE MOTION
OF ETHENEA INDEPENDENT INVESTORS S.A. FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................ | 1 |
| II. | THE COMPLAINT'S ALLEGATIONS ............................................................................ | 1 |
| III. | ARGUMENT ........................................................................................................................ | 2 |
| | A.   ETHENEA's Trading Pattern Does Not Make It Atypical ..................................... | 2 |
| | B.   ETHENEA May Rely on the Fraud-On-The-Market Theory ................................ | 6 |
| | C.   The Pension Funds' Purported Concern for the Class Is Misplaced ...................... | 7 |
| IV. | CONCLUSION .................................................................................................................... | 10 |

**TABLE OF AUTHORITIES**

**CASES**

*Ark. Tchr. Ret. Sys. v. Insulet Corp.*,
  177 F. Supp. 3d 618 (D. Mass. 2016) .................................................................................. 4

*Armour v. Network Assocs., Inc.*,
  171 F. Supp. 2d 1044 (N.D. Cal. 2001) ................................................................................ 9

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
  2023 WL 2932485 (D. Conn. Apr. 13, 2023) .................................................................. 6, 8

*Chahal v. Credit Suisse Grp. AG*,
  2018 WL 3093965 (S.D.N.Y. June 21, 2018) ...................................................................... 8

*Chauhan v. Intercept Pharms.*,
  2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ......................................................................... 5

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
  284 F.R.D. 173 (S.D.N.Y. 2012) .......................................................................................... 7

*Faris v. Longtop Fin. Techs. Ltd.*,
  2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ......................................................................... 5

*Feder v. Elec. Data. Sys. Corp.*,
  429 F.3d 125 (5th Cir. 2005) ............................................................................................ 3, 6

*Goldenberg v. NeoGenomics, Inc.*,
  2023 WL 6389101 (S.D.N.Y. Oct. 2, 2023) ..................................................................... 1, 3

*Goldstein v. Puda Coal, Inc.*,
  827 F. Supp. 2d 348 (S.D.N.Y. 2011) .................................................................................. 4

*In re Boeing Co. Aircraft Sec. Litig.*,
  2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ....................................................................... 4

*In re Comverse Tech., Inc. Sec. Litig.*,
  2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) ........................................................................ 6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) ................................................................................... 3, 8, 10

*In re Fannie Mae Sec. Litig.*,
  355 F. Supp. 2d 261 (D.D.C. 2006) ...................................................................................... 9

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
  2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) .................................................................. 5, 9

*In re JPMorgan Chase & Co. Sec. Litig.*,
  2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ................................................................ 4, 8

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) .......................................................................................... 7

*In re Moody's Corp. Sec. Litig.*,
  274 F.R.D. 480 (S.D.N.Y. 2011) ...................................................................................... 2, 8

*In re Nielsen Holdings plc Sec. Litig.*,
  2021 WL 7908334 (S.D.N.Y. Dec. 17, 2021) .............................................................................. 7

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) .................................................................................... 5, 9

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................................................. 4

*In re VEON Ltd. Sec. Litig.*,
  2022 WL 1284547 (S.D.N.Y. Apr. 29, 2022) ......................................................................... 3

*Janovici v. DVI, Inc.*,
  2003 WL 22849604 (E.D. Pa. Nov. 25, 2003) ....................................................................... 9

*Pearlstein v. BlackBerry Ltd.*,
  2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ........................................................................... 7

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  327 F.R.D. 38 (S.D.N.Y. 2018) ............................................................................................... 4

*Roofers' Pension Fund v. Papa*,
  2017 WL 1536222 (D.N.J. Apr. 27, 2017) ......................................................................... 5, 6

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
  2022 WL 1078460 (S.D.N.Y. Apr. 11, 2022) ......................................................................... 8

*Stein v. Match Grp., Inc.*,
  2016 WL 3194334 (N.D. Tex. June 9, 2016) .......................................................................... 9

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................... 1

I.      **INTRODUCTION**

The Pension Funds concede that ETHENEA possesses the "superior financial interest." Opp'n 2.[1] ETHENEA also made the required preliminary showings of typicality and adequacy. *See* Mem. 4-9. The PSLRA therefore presumes ETHENEA is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Pension Funds try to rebut that presumption by claiming ETHENEA is atypical because its fund purchased Fiserv shares after two alleged partial disclosures and before a third. That theory fails because post-disclosure purchases do not defeat typicality absent a truly "unique" defense that would dominate the litigation, and the Pension Funds identify none. Their premise also mischaracterizes the Complaint, ***which one of their members filed***: the April and May 2025 corrective events did not cure the misstatements or sever market reliance, and ETHENEA's claims rise and fall on the same alleged course of conduct as do those of the class. Courts—***including this Court***—have rejected similar and identical attacks. *See Goldenberg v. NeoGenomics, Inc.*, 2023 WL 6389101 (S.D.N.Y. Oct. 2, 2023). Consequently, the presumption stands and ETHENEA's motion should be granted.[2]

II.      **THE COMPLAINT'S ALLEGATIONS**

The Complaint alleges that Fiserv inflated reported growth by forcing legacy Payeezy merchants onto its pricier, feature-heavy Clover point-of-sale platform while attributing the uplift

---

[1] References to "¶ _" are to paragraphs of the Complaint (ECF No. 1). References to "Mem. _" are to the Memorandum of Law in Support of Motion of ETHENEA Independent Investors S.A. for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel (ECF No. 30). References to "Opp'n _" are to pages of the Memorandum of Law in Further Support of the Motion of the Pension Funds for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (ECF No. 39). All capitalized terms are defined in ETHENEA's opening brief (ECF No. 30) unless otherwise indicated. All citations are omitted and emphasis added unless noted.

[2] The Pension Funds also purchased Fiserv shares during that same period as ETHENEA, so if this trading pattern were disqualifying, it would disqualify them as well.

1

to organic customer transitions. ¶ 2. Investors began to learn the truth through three incremental corrective disclosures[3]:

- **April 24, 2025**: Fiserv reported GPV growth of 8% for 1Q25 (down from 14-17% in 2024); the stock fell by $40.20 (18.5%). ¶¶ 55, 57.

- **May 15, 2025**: Fiserv stated that Clover's GPV deceleration would persist through 2025; the stock fell by $30.73 (16.2%). ¶¶ 61, 65.

- **July 23, 2025**: Fiserv reported organic revenue growth in its Merchant segment slowed to 9% y/y (from 11% prior quarter) and lowered the top end of full-year organic growth guidance; the stock fell another 13.9%. ¶¶ 70, 72. The Pension Funds acknowledge this continued the earlier revelations and that roughly one-quarter of the total fraud-related decline is attributable to the July disclosure. *See* Opp'n 8, 10.

Defendants continued making misstatements after May 15 (*e.g.*, June 4, 2025), and the market did not fully absorb the fraud until the third disclosure on July 23, 2025. *See* ¶¶ 67-69. ETHENEA purchased Fiserv common stock on June 25, 2025 between the second and third disclosures (ECF No. 31-1), ***as did the Pension Funds*** (ECF No. 26-1 at 4-5 (purchases on May 21, 2025; May 29, 2025; May 30, 2025; June 6, 2025; July 21, 2025; and July 22, 2025)).[4]

### III.   ARGUMENT

#### A.   ETHENEA's Trading Pattern Does Not Make It Atypical

The Pension Funds' theory rests on minimizing the third corrective disclosure and asserting that the April and May 2025 disclosures fully revealed the fraud. *See* Opp'n 4-8. More specifically, the Pension Funds' assert—without any evidence—that "ETHENEA was undoubtedly on notice of Defendants' fraud" during the period between the second and third disclosures. *Id.* at 4. This argument is inconsistent with the Pension Funds' own trading and the Complaint's theory that

---

[3]   "A corrective disclosure is some public statement, not necessarily from the company itself, which reveals to the market the falsity of a prior representation." *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 487 (S.D.N.Y. 2011).
[4]   In addition to purchasing after the second corrective disclosure, Miami Beach purchased 8,452 of its 18,353 shares and Hollywood purchased 4,286 of its 7,811 shares on or after the first disclosure.

inflation persisted until the fraud was fully revealed on July 23, 2025. Both ETHENEA and the Pension Funds purchased after the second disclosure and before the third, which is when the Complaint alleges inflation persisted. *See* ¶¶ 67-69; ECF No. 31-1; ECF No. 26-1 at 4-5. If purchases in that window created atypical defenses, the same objection would apply to the Pension Funds and to class members who purchased during that period.

In any event, the law is clear that "the purchase of a stock after a partial disclosure does not bar a plaintiff from satisfying the typicality requirement." *In re VEON Ltd. Sec. Litig.*, 2022 WL 1284547, at *5-6 (S.D.N.Y. Apr. 29, 2022). As the Fifth Circuit held twenty years ago: "We reject the argument that a proposed class representative in a fraud-on-the-market securities suit is as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure purchase of the defendant company's stock." *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005). There, the post-disclosure purchase occurred after the end of the class period. Accordingly, the argument that an investor that purchased the defendant company's stock ***during*** the class period, as ETHENEA did here, has even less merit.

Moreover, the Pension Funds ignore this Court's holding in *Goldenberg* that rejected a typicality challenge where the presumptive lead plaintiff purchased all of his shares "after NeoGenomics's first disclosure" "but before its second and third disclosures." 2023 WL 6389101, at *4-5. As in *Goldenberg*, the Pension Funds "ha[ve] not shown that the Company's initial disclosure[s] w[ere] anything but a 'partial disclosure,' after which 'the market priced in some additional risk,' and [Fiserv]'s 'alleged misrepresentations and/or omissions continued to injure its investors.'" *Id.* at *5; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 38 (S.D.N.Y. 2012) ("Courts have consistently rejected the argument that post-disclosure purchases preclude a proposed class representative from meeting Rule 23(a) requirements");

3

*Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 n.2 (S.D.N.Y. 2018) (argument that plaintiff was atypical because it purchased shares after a partial corrective disclosure was "without merit because [the plaintiff's] purchase was before the final corrective disclosure"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 345-46 (S.D.N.Y. 2009) (purchase of "shares after the partial disclosures does not render [lead plaintiff] atypical or subject it to unique defenses"); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (appointing lead plaintiff with post-disclosure purchases where the partial corrective disclosures did not "sufficiently correct . . . prior false and misleading statements"); *Ark. Tchr. Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 625 (D. Mass. 2016) ("post-disclosure purchases do not undermine [] adequacy and typicality" where "the complaint alleges significant, cumulative disclosures").

Nor does it matter that ETHENEA did not purchase Fiserv common stock before the second disclosure. Courts routinely appoint lead plaintiffs and class representatives whose purchases are concentrated after an initial partial disclosure. *See In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *4 & n.2 (S.D.N.Y. Sept. 29, 2015) (rejecting defendants' contention that plaintiffs were atypical where they "made a significant fraction of their class-period purchases of JPMorgan common stock after . . . the date of the first alleged corrective disclosure," including one plaintiff that purchased "100%" of its shares after the first corrective disclosure); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *9 (N.D. Ill. Nov. 15, 2019) (finding movant who purchased 99.4% of its shares after first partial disclosure typical and holding that "there is no requirement that a lead plaintiff's purchases have been uniformly distributed over the course of a putative class period").[5]

---

[5] For the same reasons, the fact that "the July Disclosure is quantitively the smallest and least significant of the relevant disclosures" and that "most of the inflation had already been removed from Fiserv's stock price by the time ETHENEA made its sole purchase" (Opp'n 9-10) is irrelevant.

4

The Pension Funds' authorities do not help them. In *In re Petrobras Securities Litigation*, the court disqualified the presumptive lead plaintiff for numerous reasons, including because it was a lawyer-driven "artificial grouping designed merely to qualify as lead plaintiff under the PSLRA" and one member had "relied on its own valuation of Petrobras securities, and not on their market price." 104 F. Supp. 3d 618, 621, 623 (S.D.N.Y. 2015); *see also Roofers' Pension Fund v. Papa*, 2017 WL 1536222, at *6 (D.N.J. Apr. 27, 2017) (warning that "the statements in *Petrob[r]as* must be read in context" because of the numerous issues with the lead plaintiff movants). *Faris v. Longtop Financial Technologies. Ltd.* also is readily distinguishable. While the court in that case touched on the "unusual" trading of a movant that purchased shares a few days before the final corrective disclosure, the court noted that the movant had been implicated in a $1.4 billion Ponzi scheme, which "certainly subject[ed] it to a unique defense atypical of the conduct expected of a lead plaintiff." 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011). The atypical investor in *In re Hebron Technology Co., Ltd. Securities Litigation* "purchased shares of Hebron exclusively on the day that news of its fraud became public, did so in the minutes surrounding its revelation, and then continued to purchase additional shares after the disclosure allegedly caused Hebron's shares to plummet," which, "taken together, is ready fodder for a defense keyed to his idiosyncratic circumstances." 2020 WL 5548856, at *8 (S.D.N.Y. Sept. 16, 2020). Here, there is no indication that ETHENEA acted on non-public information or that it executed suspiciously timed trades during or shortly after a major corrective disclosure.[6] *See Chauhan v. Intercept Pharms.*, 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021) (declining to disqualify presumptive lead plaintiff "[a]bsent evidence that [he] did not rely on the integrity of the market price").[7]

---

[6] By contrast, like the atypical investor in *Hebron*, the Pension Funds purchased Fiserv shares on the day of and the day after the first corrective disclosure. *See* ECF No. 26-1 at 4 (purchases on April 24-25, 2025).

[7] The Pension Funds' citation to *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176 (2d Cir. 1990)—which has been abrogated—is unavailing. There, the plaintiff purchased certificates of

5

Finally, many class members, including the Pension Funds, purchased Fiserv shares after the second corrective disclosure and before the third (and final) disclosure. Thus, any reliance defense aimed at such purchasers would be classwide, and not unique to ETHENEA. In such circumstances, courts have not been "convinced that this defense is a 'unique' defense within the meaning of the PSLRA." *In re Comverse Tech., Inc. Sec. Litig.*, 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008); *see also Feder*, 429 F.3d at 137 (rejecting argument that plaintiff was subject to a "unique defense" and noting that "[o]ther institutional investors, including several that may be members of this class, made similar purchases"); *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *4 (D. Conn. Apr. 13, 2023) (granting class certification and holding that "[g]iven Alexion's status as a publicly traded company with hundreds of millions of shares, it is likely that [lead plaintiffs] are not the only potential class members that bought or sold Alexion shares between the defendants' disclosures in January 2017 and the additional disclosures in May 2017").

### B. ETHENEA May Rely on the Fraud-On-The-Market Theory

The Pension Funds note that "[t]he fraud-on-the-market presumption of reliance is the bedrock of securities class action lawsuits." Opp'n 4-5. However, because all investors are presumed to have relied on the integrity of the market price, it is "exceedingly rare" for a reliance defense to succeed. *Papa*, 2017 WL 1536222, at *6. Accordingly, a post-disclosure purchase of additional shares "has no bearing on whether or not [the representative] relied on the integrity of the market during the class period." *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012); *see also Feder*, 429 F.3d at 138 (holding that "[r]eliance on the integrity of

---

deposit from Merrill Lynch. In denying certification, the district court found "a family relationship existed between the Merrill Lynch broker on plaintiff's account (Howard Schur) and the officers controlling plaintiff," which was "also regarded as grounds for disqualifying the investor as a class representative." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 119 F.R.D. 344, 349 (S.D.N.Y. 1988). In addition, the plaintiff's choice of law firm was "inappropriate under the Code of Professional Responsibility as enacted in New York State" because one of its partners was "an obvious and objectively necessary witness." *Id.*

the market prior to disclosure of alleged fraud (i.e. during the class period) is unlikely to be defeated by post-disclosure reliance on the integrity of the market."). As the Pension Funds' counsel explained elsewhere,

> the majority of courts . . . have found that purchases made after the market became aware of the corrective information does not render [a plaintiff] an atypical class member. . . . As numerous courts have held, the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information ***has no bearing on whether or not [the representative] relied on the integrity of the market during the class period. . . . The post-disclosure purchase of the additional shares therefore will not necessarily present individual issues of reliance that render the investor atypical*** or inadequate to represent class members who did not purchase such additional shares.

Pls.' Reply Mem. of Law in Further Supp. of the Mot. for Class Cert., Appointment of Class Reps., & Appointment of Class Counsel, *In re Nielsen Holdings plc Sec. Litig.*, 2021 WL 7908334, at p. 7 (S.D.N.Y. Dec. 17, 2021) (emphasis in original) (cleaned up) (citing *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *10 (S.D.N.Y. Jan. 26, 2021) and *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008)).

  **C.**  **The Pension Funds' Purported Concern for the Class Is Misplaced**

  The Pension Funds speculate that ETHENEA will have to litigate "individual issues" because "Defendants would be well-positioned to argue that ETHENEA may not rely on the fraud-on-the-market presumption"; that there is "an enhanced risk that it would be found inadequate to represent the Class at the class certification stage"; and the Class Period may hypothetically be "altered such that ETHENEA's purchase or the July Disclosure is cut out of the case" and ETHENEA may "lose its standing." *See* Opp'n 12-14. The Pension Funds' professed concern for the class should be discounted given their—and their counsel's—interest in displacing the presumptive lead plaintiff. In any event, these are speculative hurdles that do not overcome the PSLRA presumption. *See Chahal v. Credit Suisse Grp. AG*, 2018 WL 3093965, at *7 (S.D.N.Y.

7

June 21, 2018) ("This improbable if-you-give-a-mouse-a-cookie hypothetical about a future series of events is far too attenuated to rebut the statutory presumption.").

Indeed, courts repeatedly hold that timing-based arguments like those advanced by the Pension Funds do not become the focus of the case and do not defeat typicality or adequacy. For example, in *Sjunde AP-Fonden v. General Electric Co.*, the court granted class certification after rejecting "defendants['] argument that Plaintiffs cannot represent the class because class members purchased securities at different times, including after one alleged misrepresentation but before another, or after a partial corrective disclosure," describing the argument as "wholly unpersuasive." 2022 WL 1078460, at *3 (S.D.N.Y. Apr. 11, 2022); *see also JPMorgan*, 2015 WL 10433433, at *4 ("Defendants do not cite a single case—nor is this Court aware of one—holding that a lead plaintiff seeking class certification in a securities fraud suit fails to establish adequacy or typicality where that plaintiff made securities purchases after an alleged partial corrective disclosure but before the final corrective disclosure. . . . As Plaintiffs allege that the corrective disclosures were only complete on May 21, 2015, the possible unique defense that Defendants contemplate is unlikely to become the focus of litigation."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 345 (S.D.N.Y. 2015) (holding that a "purported conflict" based on timing of securities purchases was "speculative as to adequacy at this stage and thus not grounds to defeat certification"); *Moody's*, 274 F.R.D. at 488 (post-disclosure purchases do not "in anyway threaten[] to become the focus of the litigation"); *Alexion*, 2023 WL 2932485, at *4 ("[lead plaintiff]'s purchase of Alexion shares before these additional disclosures in May 2017 does not present a time-consuming unique defense that would render [lead plaintiff] inadequate or atypical with respect to its ability to represent other class members.").[8]

---

[8]   There can be no serious dispute that Defendants will advance arguments against any lead plaintiff at the class certification stage and that the Pension Funds would not be immune from such scrutiny. For example, Defendants

Similarly, the Pension Funds' purported "concern about [ETHENEA's] adequacy if the class period is deemed to end before [the third corrective disclosure], when [ETHENEA's] significant purchases began, is "too speculative and hypothetical to rebut the presumption." *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2006). *Armour v. Network Associates, Inc.* is instructive. There, a competing movant (Bakers Pension Funds) argued that "the timing of Louisiana Teachers' stock purchases makes its claims susceptible to a defense based on any corrective disclosures issued by Network Associates prior to Louisiana Teachers' first purchase on December 6, 2000." 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001). The court held that the arguments:

> fail for several reasons. Most importantly, they are based on pure speculation. The PSLRA requires "proof" that the presumptively most adequate plaintiff will not fairly and adequately protect the class or is subject to unique defenses. . . . Speculative assertions such as those offered by the Bakers Pension Funds are therefore insufficient to rebut the lead plaintiff presumption in this case.

*Id.*; *see also Janovici v. DVI, Inc.*, 2003 WL 22849604, at *13 (E.D. Pa. Nov. 25, 2003) ("Although some of the movants suggest that it is *possible* that the Cedar Street Group *may* not be able to adequately represent the interest of the Class, such speculation is insufficient to overcome the presumption under the PSLRA." (emphases in original)); *Stein v. Match Grp., Inc.*, 2016 WL 3194334, at *4 (N.D. Tex. June 9, 2016) ("There is, of course, a marked difference between affirmatively demonstrating that [the presumptive lead plaintiff] is not an adequate representative or is subject to unique defenses and simply claiming that [the presumptive lead plaintiff] *might* be subject to such arguments in the future.").

---

could attack the Pension Funds as a group formed solely by their counsel to aggregate their losses to try to claim the largest loss or that that they are atypical because one of the members purchased Fiserv stock on the same day and the day following a corrective disclosure, as was the case in *Petrobras* and *Hebron*, respectively, and which the Pension Funds themselves cite.

9

In sum, "exacting proof [is] needed to rebut the PSLRA's presumption." *Facebook*, 288 F.R.D. at 40. The Pension Funds do not come close to providing any.

## IV.  CONCLUSION

ETHENEA has the largest financial interest and satisfies typicality and adequacy, and the Pension Funds' new-found trading-window critique is both self-defeating and legally insufficient to rebut the PSLRA presumption. The Court should appoint ETHENEA as Lead Plaintiff and approve its selection of Lead Counsel.

DATED: October 14, 2025            Respectfully submitted,

**MOTLEY RICE LLC**

*/s/ William H. Narwold*
William H. Narwold
20 Church St., 17th Floor
Hartford, CT  06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
bnarwold@motleyrice.com

and

Gregg S. Levin
Christopher F. Moriarty (admitted *pro hac vice*)
Andrew P. Arnold
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
glevin@motleyrice.com
cmoriarty@motleyrice.com
aarnold@motleyrice.com

*Counsel for ETHENEA Independent Investors S.A.
and Proposed Lead Counsel for the Class*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the word count limit set forth in Local Civil Rule 7.1(c). According to the word count feature of the word-processing system used to prepare this brief, the document contains 3,290 words, excluding the parts of the document exempted by the rule.

                                                */s/ William H. Narwold*
                                                William H. Narwold

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

I certify under penalty of perjury that the foregoing is true and correct. Executed on October 14, 2025.

*/s/ William H. Narwold*
William H. Narwold